**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------- X

KDW RESTRUCTURING &
LIQUIDATION SERVICES LLC, as
Trustee of the Jennifer Convertibles
Litigation Trust,

                 **Plaintiff,**

             **- against -**

HARLEY GREENFIELD, EDWARD G.
BOHN, KEVIN L. COYLE, RAMI
ABADA, MARK J. BERMAN, EDWARD
B. SEIDNER, KEVIN MATTLER, and
LESLIE FALCHOOK,

                **Defendants.**

----------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _6/12/12_

**OPINION AND ORDER**

12 Civ. 258

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

        KDW Restructuring & Liquidation Services LLC, trustee of the

litigation trust held on behalf of debtor Jennifer Convertibles, Inc. ("Jennifer"),

brings this action to recover losses stemming from 2009 transactions between

Jennifer and Jara Enterprises, Inc. ("Jara"). Defendants include members of

Jennifer's 2009 Board of Directors (Greenfield, Bohn, Coyle, Abada, and Berman);

and Jennifer's corporate officers (Seidner, Mattler, and Falchook). All defendants

now move to dismiss plaintiff's breach of fiduciary duty claim.  For the reasons stated below, the motions of Mattler, Falchook, Seidner and Abada are granted, while the motion of Greenfield is denied.  The motions of Bohn, Coyle, and Berman are granted in part and denied in part.

## II.    BACKGROUND

### A.    The Directors and Officers of Jennifer and Jara

Jennifer, a Delaware corporation, is the largest sofa bed and leather specialty retailer in the United States.[1]  Jara is a private company that operates under Jennifer's brand name.[2]  Greenfield, Seidner, and Fred Love founded Jennifer and Jara.[3]  Upon Love's death, Jane Love, Greenfield's sister and Love's widow, became Jara's President and was the controlling shareholder of Jara during 2009.[4]  Greenfield and Seidner owned shares in Jara prior to 2009, but had sold them to Love.[5]  Abada, Falchook, and Mattler had been employees of Jara prior to

---

[1]    *See* Complaint ¶ 10, *KDW Restructuring & Liquidation Services LLC v. Greenfield, et al.*, No. 10-13779 (ALG) (Bankr. S.D.N.Y.  Nov. 2, 2011).

[2]    *See* 11/23/09 Jennifer Board Meeting Minutes ("11/23/09 Bd. Min."), Ex. A10 to Declaration of Nicole Gueron, counsel for defendants, in support of Defendants' Motion to Dismiss the Complaint ("Gueron Dec.").

[3]    *See* Complaint ¶¶ 22–23.

[4]    *See id.* ¶¶ 26–27.

[5]    *See id.* ¶ 25.

2009.[6]

Greenfield, Bohn, Coyle, Abada, and Berman comprised Jennifer's Board of Directors in 2009.[7]  Greenfield remains Jennifer's Chief Executive Officer.[8]  Abada remains Jennifer's President.[9]  Seidner, though often present at Jennifer's board meetings,[10] is not a board member, but an Executive Vice President.[11]  Falchook and Mattler are Vice Presidents of Jennifer who were never present at board meetings during 2009.[12]

**B.    1995 SEC Investigation**

In 1995, the SEC commenced a formal investigation into Jennifer's business.[13]  This investigation was accompanied by several class action and derivative suits against Jennifer's directors, which resulted in several settlement

---

[6]    *See id.* ¶ 29.

[7]    *See id.* ¶¶ 13–17.

[8]    *See id.* ¶ 13.

[9]    *See id.* ¶ 14.

[10]    *See, e.g.*, 11/23/09 Bd. Min.

[11]    *See* Complaint ¶ 18.

[12]    *See id.* ¶¶ 19–20.

[13]    *See id.* ¶ 31.

3

agreements in 2005.[14]  These agreements required a "restructuring" of the relationship between Jennifer and Jara, and the creation of a "monitoring committee" to scrutinize the dealings between the two companies.[15]  Other agreements stipulated a price for merchandise, created a warehousing fee, and required Jara to contribute a minimum of $150,000 per month to cover advertising costs.[16]

### C.     Financial Difficulties

In early 2009, Jennifer was experiencing financial difficulties — expected revenue increases had not materialized.[17]  Jara was also experiencing financial difficulties and was indebted to Jennifer.[18]  Jennifer's board allowed Jara to continue to accumulate debt and created an "allowance for debt" of $3,167,000 for a thirteen-week period ending November 28, 2009.[19]

### D.     The 2009 Transactions

---

[14]     *See id.*

[15]     *See id.*

[16]     *See id.* ¶ 32.

[17]     *See* 02/17/09 Jennifer Board Meeting Minutes, Ex. A2 to  Gueron Dec.

[18]     *See* Complaint ¶ 38.

[19]     *See id.* ¶¶ 41, 43.

In a three-day meeting, beginning on November 23, it was agreed by the members of the Board, with the exception of Abada, that Jara would begin to function as an agent of Jennifer, taking a thirty-five percent commission.[20] Jara defaulted on this agreement.[21] Abada sought the expertise of an investment firm, TM Capital, regarding a Jara acquisition.[22] TM Capital indicated that an acquisition of Jara would add only "marginally" to Jennifer's marketability.[23] Abada expressed his concern regarding the limited potential of an acquisition, most notably in an email prior to the November 23 meeting.[24] He also expressed concerns regarding Greenfield's presence in Jara-focused meetings, and was informed by the company's counsel that Greenfield should refrain from voting.[25] Greenfield recused himself on some occasions when Jara was discussed,[26] but

---

[20]    See 11/23/09 Bd. Min.

[21]    See Complaint ¶ 47.

[22]    See 5/12/09 Jennifer Board Meeting Minutes, Ex. A7 to Gueron Dec.

[23]    See 6/8/09 Jennifer Board Meeting Minutes ("6/8/09 Bd. Min."), Ex. A8 to Gueron Dec.

[24]    See 11/25/09 Jennifer Board Meeting Minutes ("11/25/09 Bd. Min."), Ex. A12 to Gueron Dec.

[25]    See 11/23/09 Bd. Min.

[26]    See, e.g., 5/11/09 Jennifer Board Meeting Minutes, Ex. A9 to Gueron Dec.

remained in the November 23 meeting without voting.[27]  However, Greenfield did vote to continue to ship products to Jara on one occasion.[28]  Greenfield also spoke with Jara's representative on behalf of the Board,[29] and expressed his consent to the final 2009 transaction, although he did not vote.[30]

On December 31, 2009, Jennifer acquired Jara's business assets, paying $635,000 for Jara's inventory.[31]  This final agreement relieved Jara of its obligation to pay $301,000 due under the previous agreement,[32] and permanently relieved Jara of $4,000,000 in prior obligations.[33]  All directors approved this agreement.[34]  However, Abada expressed consistent reservations about any deal

---

[27]   *See* 11/23/09 Bd. Min.

[28]   *See* 12/18/09 Jennifer Board Meeting Minutes ("12/18/09 Bd. Min."), Ex. A15 to Gueron Dec.

[29]   *See* 12/14/09 Jennifer Board Meeting Minutes, Ex. A14 to Gueron Dec.

[30]   *See* 12/26/09 Jennifer Board Meeting Minutes ("12/26/09 Bd. Min."), Ex. A16 to Gueron Dec.

[31]   *See* Complaint ¶ 49.

[32]   *See id.* ¶ 50.

[33]   *See id.* ¶ 51.

[34]   *See* 1/31/09 Jennifer Board Meeting Minutes, Ex. A18 to Gueron Dec.

with Jara,[35] and approved the final deal reluctantly.[36]

Jara provided no financial information prior to the agreements.[37] The 2009 transactions caused Jennifer to suffer great financial loss — a net loss of $11.008 million dollars at the end of the 2009 fiscal year.[38] Losses also totaled $6.8 and $6.4 million in the first and second quarter of 2010, respectively.[39]

## III.    LEGAL STANDARD

### A.    Motion to Dismiss

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must assume "all well-pleaded, nonconclusory factual allegations in the complaint to be true"[40] and "draw all reasonable inferences in the plaintiff's favor."[41] On the other hand, "threadbare recitals of the elements of a

---

[35]    *See*, *e.g.*, 11/25/09 Bd. Min.; *see also* Complaint ¶ 53(c).

[36]    *See* 12/26/09 Bd. Min.

[37]    *See* Complaint ¶ 52(e).

[38]    *See id.* ¶ 59.

[39]    *See id.* ¶ 55.

[40]    *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 , 678–679 (2009)).

[41]    *Ofori Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

cause of action, supported by mere conclusory statements, do not suffice."[42]  To survive a motion to dismiss, therefore, the allegations in the complaint must meet a standard of "plausibility."[43]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[44]  Plausibility "is not akin to a probability requirement," rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[45]

The plaintiff in support of her claim may allege "upon information and belief" facts that are "peculiarly within the possession and control of the defendant."[46]  Conversely, the plaintiff should not allege upon information and belief matters that are presumptively within her personal knowledge, unless she rebuts the presumption.[47]  Such matters include "'matters of public record or matters generally known in the community . . . inasmuch as everyone is held to be

---

[42]     *Iqbal*, 556 U.S. at 678 (citation omitted).

[43]     *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  *Accord Iqbal*, 556 U.S. at 678.

[44]     *Iqbal*, 556 U.S. at 678 (citation omitted).

[45]     *Id.* (quotation marks omitted).

[46]     *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

[47]     *See Sanders v. Grenadier Realty, Inc.*, 367 Fed. App'x 173, 177 n.2 (2d Cir. 2010).

conversant with them.'"[48]

## B.    Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that, other than amendments as a matter of course, "a party may amend [its pleading] only by leave of court or by written consent of the adverse party."[49]  Although "[t]he Court should freely give leave when justice so requires,"[50] it is "within the sound discretion of the district court to grant or deny leave to amend."[51]  When a motion to dismiss is granted, "[i]t is the usual practice . . . to allow leave to replead."[52]  Where plaintiff inadequately pleads a claim and cannot offer additional substantive information to cure the deficient pleading, granting leave to replead is futile.[53]

---

[48]     *Id.* (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1224, at 300–01 (3d ed. 2004)).

[49]     *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (citation and quotation marks omitted).

[50]     Fed. R. Civ. P. 15(a)(2).

[51]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted)

[52]     *Schindler v. French,* 232 Fed. App'x 17, 18 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991)) (quotation marks omitted).

[53]     *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## IV.   APPLICABLE LAW

### A.   Choice of Law

New York courts decide questions relating to corporate internal affairs "in accordance with the law of the place of incorporation."[54]  The internal affairs doctrine recognizes that "only one State should have the authority to regulate a corporation's internal affairs [—] matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders [—] because otherwise a corporation could be faced with conflicting demands."[55] Jennifer is a Delaware corporation;[56] therefore, Delaware law governs this breach of fiduciary duty claim.

### B.   Breach of Fiduciary Duty

Under Delaware law, a breach of fiduciary duty claim has two

---

[54]   *Scottish Air Int'l, Inc. v. British Caledonian*, 81 F.3d 1224, 1234 (2d Cir. 1996) (citation omitted).

[55]   *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982).   *Accord* Restatement (Second) of Conflict of Laws § 302 cmt. e ("Uniform treatment of directors, officers and shareholders is an important objective which can only be attained by having the rights and liabilities of those persons with respect to the corporation governed by a single law.").

[56]   *See* Complaint ¶ 10.

10

elements:  (1) the existence of a fiduciary duty, and (2) the breach of that duty.[57]  A

Delaware corporation owes a "triad" of fiduciary duties to its shareholders and the

corporation, composed of the duty of care, the duty of loyalty, and the duty to act

in good faith.[58]  Corporate directors and officers have identical fiduciary duties.[59]

However, "Delaware law clearly prescribes that a director who plays no role in the

process of deciding whether to approve a challenged transaction cannot be held

liable on a claim that the board's decision to approve that transaction was

wrongful."[60]

   To prove a breach of the duty of care, a plaintiff must demonstrate

gross negligence.[61]  Gross negligence has a "stringent meaning" in Delaware

---

[57]   *See Estate of Eller v. Bartron*, 31 A.3d 895, 897 (Del. 2011) (citing *Heller v. Kiernan*, No. 1484-K, 2002 WL 385545, at *3 (Del. Ch. Feb. 27, 2002)).

[58]   *See In re Fedders N. Am., Inc.*, 405 B.R. 527, 539 (Bankr. D. Del. 2009) (citing *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998)).

[59]   *See Gantler v. Stephens*, 965 A.2d 695, 709 (Del. 2009) (footnote omitted).

[60]   *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 566 (Bankr. D. Del. 2008) (citation omitted) (citing *Citron v. E.I. du Pont de Nemours & Co.*, 584 A.2d 490, 499 (Del. Ch. 1990)) (finding allegations that an officer who became a director for a few days after the alleged breaches were insufficient to state a claim). *Accord In re Alloy, Inc.*, No. 5626–VCP, 2011 WL 4863716, at *8 (Del. Ch. Oct. 13, 2011).

[61]   *See In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 651 (Del. Ch. 2008) (citing *Aronson v. Lewis*, 473 A.2d 805, 812–13 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)).

corporate law, involving "indifference amounting to recklessness."[62]  The duty of

loyalty "mandates that the best interest of the corporation and its shareholders takes

precedence over any interest possessed by a director, officer or controlling

shareholder."[63]  A duty of loyalty claim must allege that there is a "[misuse of]

power over corporate property or processes in order to benefit [a director] rather

than advance corporate purposes."[64]

The duty to act in good faith, a subsidiary duty of the duty of loyalty,[65]

proscribes conduct that is not disloyal but is "qualitatively more culpable than

gross negligence."[66]  The Delaware Supreme Court has identified three examples

---

[62]     *Zimmerman v. Crothall*, No. 6001–VCP, 2012 WL 707238, at *6
(Del. Ch. Mar. 5, 2012) (citing *Albert v. Alex. Brown  Mgmt. Services, Inc.*,
 No. Civ.A. 762-N, No. Civ.A. 763-N, 2005 WL 2130607, at *4 (Del. Ch. Aug. 26,
2005)).

[63]     *In re Fedders*, 405 B.R. at 540 (citing *Cede & Co. v. Technicolor,
Inc.*, 634 A.2d 345, 361 (Del. 1993)).

[64]     *Dweck v. Nasser*, No. 1353–VCL, 2012 WL 161590, at *12 (Del. Ch.
Jan. 18, 2012) (citing *Steiner v. Meyerson*, No. 13139, 1995 WL 441999, at *2
(Del. Ch. July 19, 1995)).  *Accord Joyce v. Cuccia*, No. 14953, 1997 WL 257448,
at *5 (Del. Ch. May 14, 1997) (citation omitted) ("[P]laintiffs must allege facts
showing that a self-interested transaction occurred, and that the transaction was
unfair to the plaintiffs.").

[65]     *See In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 754 n.447
(Del. Ch. 2005), *aff'd*, *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27 (Del.
2006).

[66]     *In re Walt Disney*, 906 A.2d at 66.

of bad faith:[67]  (1) where a fiduciary acts with different purpose to that of

advancing the corporation's interest;[68] (2) where a fiduciary "acts with the intent to

violate applicable positive law";[69] and (3) where a fiduciary demonstrates a

conscious disregard for a known duty.[70]  Bad faith actions are not limited to these

examples, but these are the "most salient."[71]

### 1.    Section 102(b)(7)

Under section 102(b)(7) of Delaware's General Corporation Law, a

corporation may include an exculpation clause in its certificate of incorporation.[72]

Such a clause may shield directors from liability for a breach of the duty of care,

but not for breaches of the duties of loyalty and good faith.[73]

### 2.    The Business Judgment Rule

---

[67]    *See id.* at 67.

[68]    *See id.*; *see also In re Walt Disney*, 907 A.2d at 754 (citing *Guttman v. Huang*, 823 A.2d 492, 506 n.34 (Del. Ch. 2003)) (finding that the reasons for disloyalty are irrelevant).

[69]    *In re Walt Disney*, 906 A.2d at 67.

[70]    *See id.*

[71]    *Id.* (citation omitted).

[72]    *See* Del. Cod. Ann. tit. 8 §102(b)(7) (West 2011).

[73]    *See id.  See also In re NYMEX  S'holder Litig.,* No. 3621–VCN, No. 3835–VCN, No. 2009 WL 3206051, at *6 (Del. Ch. Sept. 30, 2009)*; In re Direct Response Media, Inc.,* 466 B.R. 626, 650 (Bankr. D. Del. 2012).

The business judgment rule is a presumption that, in making business decisions, "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."[74]  The burden is on the plaintiffs to rebut this automatic presumption.[75]  If the presumption is rebutted, the burden shifts to the defendant to demonstrate the entire fairness of the transaction.[76]  The business judgment rule prevents a court from "second-guessing" the rational decisions of directors who have "availed themselves of all material and reasonably available information."[77]

A board's decision is not shielded where directors are:  (1) interested or lack independence regarding the decision,[78] (2) acting in bad faith, (3) lacking a

---

[74]     *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 124 (Del. Ch. 2009) (citing *Aronson*, 473 A.2d at 812, *overruled on other grounds*, *Brehm*, 746 A.2d 244).

[75]     *See id.*; *see, e.g.*, *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (finding that the plaintiff must "plead around" the business judgment rule presumption).

[76]     *See Zimmerman*, 2012 WL 707238, at *5.

[77]     *In re Citigroup*, 964 A.2d at 124.

[78]     A director is interested if she reaps a personal benefit from a transaction that will not be shared equally with shareholders.  *See In re Alloy, Inc.*, No. 5626–VCP, 2011 WL 4863716, at *7 (Del. Ch. Oct. 13, 2011) (citing *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993)).  A director is interested if she appears on both sides of the transaction.  *See Zimmerman*, 2012 WL 707238, at *12 (citing *Orman v. Cullman*, 794 A.2d 5, 25 n.50 (Del. Ch. 2002)).  A director is independent if her decisions are based upon "corporate merits" and not outside

rational purpose for the decision, or (4) grossly negligent (including failing to consider all available information).[79]  A showing that a "majority of the board of directors was [interested] and [lacked] independence would provide sufficient support for a claim for breach of loyalty to survive a motion to dismiss."[80] However, "notwithstanding approval by a majority of disinterested and independent directors," a breach of fiduciary duty claim may exist where a decision can be explained only by bad faith.[81]  An individual director's "disqualifying self-interest or lack of independence must be material, i.e., 'reasonably likely to affect the decision-making process of a reasonable person . . . .'"[82]

---

influences.  *See In re Alloy*, 2011 WL 4863716, at *7 (citing *Aronson*, 473 A.2d at 816).

[79]     *See In re Lear Corp. S'holder Litig.*, 967 A.2d at 652 n.42 (citing *Brehm*, 746 A.2d at 264 n.66).

[80]     *In re Alloy*, 2011 WL 4863716, at *7 (citing *In re NYMEX  S'holder Litig.*, 2009 WL 3206051, at *6).

[81]     *Id.* (citing *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 981 (Del. Ch. 2000)).  *Accord Parnes v. Bally Entm't Corp.*, 722 A.2d 1243, 1246 n.12 (Del. 1999) (finding that an entire board had failed to exercise good faith where a majority of the board members were found to be independent).

[82]     *In re Alloy*, 2011 WL 4863716, at *7 (quoting *Cede & Co.*, 634 A.2d at 363).

## V.    DISCUSSION[83]

The plaintiff has properly pled the existence of three fiduciary duties owed by all defendants, who are directors or officers of a Delaware corporation — the duty of care, the duty of loyalty, and the duty to act in good faith.

### A.    A Duty of Care Claim Is Barred by the Exculpatory Clause

Jennifer's certificate of incorporation includes an exculpatory clause, pursuant to section 102(b)(7) of Delaware's General Corporate Law.[84]  The clause protects directors from liability for breach of fiduciary duty except in cases of breach of the duty of loyalty, bad faith, knowing violation of the law, or improper personal benefit, as is appropriate under Delaware law.[85]  As such, no claim for the breach of the duty of care can be maintained against any defendant.[86]

### B.    Duty of Loyalty and Good Faith Claims Against Mattler,

---

[83]    Defendants also moved to stay discovery.  However, since they did not also move for an expedited decision, the point is moot.  The motion is denied, as I have now ruled on the motions to dismiss.

[84]    *See* Certificate of Incorporation, Ex. B to Gueron Dec., at 3; Defendants Greenfield's and Seidner's Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Def. Mem. 1") at 19.

[85]    *See* Def. Mem. at 19.

[86]    *See In re NYMEX  S'holder Litig.,* 2009 WL 3206051, at *6 (finding that an exculpatory clause in a company's certificate of incorporation shielded its directors from liability for breaches of the duty of care).  The plaintiffs concede that the exculpatory clause bars any duty of care claim. *See* Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Pl. Mem.") at 12.

### Falchook, and Seidner Are Not Facially Plausible

The plaintiff argues that non-director officers Mattler, Falchook, and Seidner are as liable as voting directors because they "implemented" the 2009 transactions.[87] The plaintiffs do not provide any support for this conclusory assertion. Under Delaware law, if an officer could not have voted to prevent the transaction, they are not liable for breaches arising out of that transaction.[88]

### 1.    Claims Against Mattler and Falchook Are Dismissed

Mattler and Falchook are non-director officers at Jennifer,[89] who did not vote to approve any of the alleged breaches of fiduciary duties.[90] They are mentioned only cursorily in the complaint — in a general claim for damages, a statement of their positions, an allegation that they had previously been employees of Jara, and once in the conclusion.[91] A claim for breach of the duty of loyalty is not sufficiently pleaded against them. Aside from their prior employment at Jara,

---

[87]    *See* Pl. Mem. at 7.

[88]    *See In re Bridgeport Holdings, Inc.*, 388 B.R. at 566 (citing *Citron*, 584 A.2d at 499) (finding that an officer who became a director temporarily was not sufficiently involved in a transaction to be held liable for that transaction).

[89]    *See* Complaint ¶¶ 19–20.

[90]    *See* Defendants Abada's, Mattler's, and Falchook's Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Def. Mem. 2") at 11.

[91]    *See* Complaint ¶¶ 19–21, 29.

they had no material connection to that company in 2009.[92]  They derived no personal benefit from the transaction and had no power to misuse.  A breach of the duty to act in good faith claim is also insufficiently pleaded against these two defendants because they did not approve or recommend the transaction, and, therefore, could not have acted contrary to the corporation's interest, the law, or any known duty.

### 2.    Claims Against Seidner Are Dismissed

Seidner is a founder of Jara and a former shareholder.[93]  However, he has no present connection to Jara, and there is no indication in the complaint that he received an improper benefit from the transaction.  As discussed above, the plaintiff's argument that non-voting officers are liable because they "implemented" the 2009 transactions fails.[94]  A duty of loyalty claim is insufficiently pleaded.  A duty of good faith claim also fails.  Although Seidner sat on the Board on occasion, he had no power to vote, and, therefore, could not approve or prevent the transaction.[95]

---

[92]    *See id.* ¶ 29.

[93]    *See id.* ¶¶ 22, 25.

[94]    *See supra* Part V.B.  *See also* Pl. Mem. at 7.

[95]    *See Continuing Creditors' Comm. of Star Telecomm, Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 462 (D. Del. 2004) (citation omitted) (finding that pleading an officer's title and dates of service is not sufficient to state a claim).

### C.   Abada Is Insulated from Liability by the Business Judgment Rule

Abada is a director, but voted against all but the final agreement.[96]  He also consistently expressed reservations about transactions with Jara.[97]  As such, Abada is protected by the business judgment rule.[98]  The plaintiffs have not adequately pled specific facts about Abada to demonstrate that he was interested, acting in bad faith, lacking a rational purpose, or grossly negligent.  Abada is not an interested party — he derived no unfair personal benefit from the transaction.  His prior employment at Jara does not plausibly demonstrate that he was reaping a material personal benefit,[99] particularly considering that he thought the deal ill-advised.[100]  Neither a bad faith nor duty of loyalty claim against this defendant is facially plausible.  The plaintiffs argue that parties who failed to take affirmative action are just as liable as Greenfield.[101]  However, Abada considered available

---

[96]      *See* 12/26/09 Bd. Min.

[97]      *See*, *e.g.*, 11/25/09 Bd. Min.; *see also* Complaint ¶ 53(c).

[98]      *See In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d at 126–127 (holding that plaintiffs failed to rebut the business judgment rule where defendants had monitored risk but still suffered losses).

[99]      *See Continuing Creditors' Comm. of Star Telecomm, Inc.,* 385 F. Supp. 2d at 462 (citation omitted).

[100]      *See*, *e.g.*, 11/25/09 Bd. Min.

[101]      *See* Pl. Mem. at 18.

expert information from TM Capital and submitted this information to his colleagues.[102]  As a result, the claims against Abada are dismissed.

### D.   Duty of Loyalty and Good Faith Claims Against Greenfield Are Sufficiently Pleaded

Greenfield complains that because of the collective nature of the Complaint, the allegations against him are not sufficient to support a claim. However, there are sufficient specific facts in the Complaint to support claims for breach of the duty of loyalty and breach of the duty to act in good faith against Greenfield.   Greenfield presses an overly broad interpretation of the business judgment rule that shields directors whenever a majority of the board is disinterested.[103]  This formulation does not take into account the possibility that certain actions can only be explained by bad faith.[104]

### 1.   The Duty of Loyalty

Greenfield was a founder of Jara.[105]  Greenfield's sister, Jane Love,

---

[102]   *See* 6/8/09 Bd. Min.

[103]   *See* Def. Mem. 1 at 11 (citing *Orman,* 794 A.2d at 19–21).

[104]   *See Parnes*, 722 A.2d at 1246 n.12 (finding that an entire board had failed to exercise good faith where a majority of the board members were found to be independent).

[105]   *See* Complaint ¶ 22.

was the controlling shareholder of Jara during the 2009 transactions.[106]  He voted

to continue shipping to Jara despite Jara's delinquency[107] and corporate counsel's

advice that he refrain from voting on Jara-related issues.[108]  Drawing reasonable

inferences in plaintiff's favor, as I must, these facts suggest that Greenfield may

have been an interested party, on both sides of the transaction, reaping a personal

benefit.[109]  As such, plaintiffs have adequately pled that Greenfield is not protected

by the business judgment rule and the breach of the duty of loyalty claim survives.

### 2.    The Duty to Act in Good Faith

It is also reasonable to infer that Greenfield may have acted in his own

interest when consenting to the 2009 transactions.[110]  There are sufficient facts to

indicate that Greenfield consciously disregarded his conflict of interest — most

---

[106]    *See id.* ¶¶ 26–27.

[107]    *See* 12/18/09 Bd. Min.

[108]    *See* 11/23/09 Bd. Min.

[109]    *See Zimmerman*, 2012 WL 707238, at *12 (citation omitted) (finding that a director is interested whenever she stands on both sides of a transaction).

[110]    *See In re Lear Corp. S'holder Litig.*, 967 A.2d at 652 n.42 (citing *Brehm*, 746 A.2d at 264 n.66) (finding that the business judgment rule is rebutted when a director is interested or acting in bad faith).  *See also In re Walt Disney*, 906 A.2d at 67 (holding that a conscious disregard for a known duty is an example of bad faith).

notably, when he voted to continue shipping inventory to Jara[111] — and had a personal stake in the transaction.[112]  Moreover, he is not protected by the business judgment rule, because he is an interested party who may not have acted in Jennifer's interest.

### E.    Defendants Berman, Bohn, and Coyle

### 1.    No Breach of the Duty of Loyalty

There are no well-pleaded facts to suggest that Berman, Bohn, and Coyle, voting directors of Jennifer, were on both sides of the 2009 transactions, or that they were to receive an improper personal benefit.  As such, there is no legitimate claim for breach of the duty of loyalty against these three defendants.[113] Plaintiffs argue that directors who acquiesce to an improper transaction are as liable as a single disloyal director, relying on *Linda Parnes v. Bally Entertainment Corp.*[114]  However, in that case, the Delaware Supreme Court rested its decision on the general irrationality of the board's decision, not the domination of the board's

---

[111]    *See* 12/18/09 Bd. Min.

[112]    *See* Complaint ¶¶ 26–27.

[113]    *See In re Alloy, Inc.*, 2011 WL 4863716, at *9 (finding that plaintiff must plead specific allegations of control in order to create reasonable inferences that directors lack independence).

[114]    *See* Pl. Mem. at 14.

judgment by one interested party.[115]

### 2.   Breach of the Duty to Act in Good Faith

These three defendants are not protected by the business judgement rule.  They are not interested parties, but the well-pleaded facts suggest that they acted in bad faith.[116]  These defendants repeatedly transacted with Jara, despite Jara's debt,[117] their chairman's conflict of interest,[118] and Abada's and TM Capital's warning of minimal benefit.[119]  Their desire to press this deal indicates a disregard for the duty to examine all available information — information that was readily at hand through Abada's research.  Plaintiffs' reliance on *In re Tower Air, Inc.* is appropriate. In that case, plaintiff's allegations were similarly "explicable only by bad faith."[120]  Drawing all reasonable inferences in favor of plaintiffs, it is plausible that these defendants' actions lacked a rational corporate purpose.

### F.   Leave to Amend Is Partially Granted

---

[115]   *See Parnes*, 722 A.2d at 1247.

[116]   *See In re Lear Corp. S'holder Litig.*, 967 A.2d at 652 n.42 (citing *Brehm*, 746 A.2d at 264 n.66) (finding that the business judgment rule is rebutted when a director acts in bad faith).

[117]   *See* Complaint ¶¶ 41, 43.

[118]   *See id.* ¶¶ 26–27

[119]   *See* 6/8/09 Bd. Min.

[120]   *In re Tower Air, Inc.*, 416 F.3d at 241.

The plaintiffs have requested leave to replead.[121]  Leave to replead is granted with respect to the duty of loyalty claim against Berman, Bohn, and Coyle, and the claims against Abada.  Granting leave to replead against Mattler, Falchook, and Seidner would be futile, because, as non-voting officers, these defendants cannot be liable for the alleged breach of fiduciary duty.[122]

## VI.   CONCLUSION

For the foregoing reasons, Defendants Mattler's, Falchook's, Seidner's, and Abada's motions to dismiss are granted in full.  Greenfield's motion is denied.  Defendants Berman's, Bohn's, and Coyle's motions are denied in part and granted in part: the breach of the duty of loyalty claim is dismissed, the claim of breach of the duty to act in good faith survives.  Any amended Complaint must be filed within twenty-one (21) days of the date of this order.  The Clerk of the Court is directed to close these motions (Docket Nos. 15, 17, and 20).  A conference is scheduled for June 25, at 4:30 p.m. in Courtroom 15C.

---

[121]    *See* Pl. Mem. at 18.

[122]    *See Cuoco*, 222 F.3d at 112 (holding that repleading is futile when a complaint is substantively insufficient).

24

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June _11_ , 2012

- Appearances -

**For Plaintiff:**

Clifford A. Katz, Esq.
Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP
150 East 52nd Street
New York, New York 10022
(212) 592-3000

**For Defendants Greenfield and Seidner:**

Nicole Gueron, Esq.
Isaac Zaur, Esq.
Clarick Gueron Reisbaum, LLP
40 West 25th Street
New York, New York 10010
(212) 633-4310

**For Defendants Bohn, Coyle, and Berman:**

Russell M. Yankwitt, Esq.
Yankwitt & McGuire, LLP
140 Grand Street, Suite 501
White Plains, New York 10601
(914) 686-1500

**For Defendants Abada, Mattler, and Falchook**:

Renee M. Zaytsev, Esq.
Thomas J. Fleming, Esq.
Olshan Grundman Frome Rosenzweig & Wolosky LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300